UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISON
CRIMINAL ACTION NO. 5:19-CR-22-TBR

UNITED STATES OF AMERICA,                                                    PLAINTIFF

v.

KENDRICK MALONE,                                                             DEFENDANT

**MEMORADUM OPINION AND ORDER**

This matter is before the Court on Defendant Kendrick Malone's Motion to Suppress. [DN 20]. The Court conducted an evidentiary hearing on November 13, 2019 and both parties have submitted briefs in support of their position. [DN 27, 29]. This matter is ripe for adjudication. For the reasons stated herein, Defendant's Motion to Suppress, [DN 20], is DENIED.

**BACKGROUND**

On August 9, 2018, detectives with the McCracken County Police Department arrested an individual ("CS 1") for trafficking in methamphetamine. [DN 31 at 91]. CS 1 made statements against his penal interest, including that his supplier was obtaining narcotics from a black male living in the Forrest Hills neighborhood of Paducah, Kentucky. *Id.* A search of his supplier's cell phone revealed that this man went by the name "Gangsta" and had a Memphis cell phone number. *Id.*

On September 19, 2018, police arrested a second individual ("CS 2") for trafficking in methamphetamine. *Id.* CS 2 identified his source of supply as a black male from Memphis using the name "Gangsta." *Id.* CS 2 stated that he had purchased methamphetamine from Gangsta every day for the past ninety days at an apartment in Forrest Hills. *Id.* CS 2 also provided detectives with the same Memphis cell phone number that had been connected to Gangsta pursuant to the arrest of CS 1. *Id.* Moreover, CS 2 informed detectives that Gangsta had been living with a white female

1

in the Forrest Hills residence but had recently kicked her out. *Id.* Finally, CS 2 described Gangsta's physical appearance and approximate age. *Id.* at 92.

Based on this information, detectives contacted Central Dispatch regarding the Forrest Hills residence. *Id.* They learned that on August 4, 2018, a woman named E.H. called the police from the residence claiming she had been raped by Kenneth Malone. *Id.* Detectives also contacted the local power company and found that the apartment's utilities were in E.H.'s name. [DN 27 at 76]. Next, detectives searched law enforcement databases and social media sites for individuals named Kenneth Malone. [DN 31 at 92]. They discovered a man named Kendrick Malone who had ties to Western Kentucky and Memphis, Tennessee. *Id.* The search also revealed Malone's last known address was in Memphis and he was wanted in Tennessee for drug-related charges. *Id.* Detectives then showed a photograph of Kendrick Malone to CS 2, who positively identified the man as Gangsta. *Id.* Finally, detectives briefly conducted surveillance at the Forrest Hills residence but did not see Malone. [DN 27 at 76].

The same day, detectives applied for a search warrant for the Forrest Hills residence. [DN 76]. The residence was searched and evidence of drug trafficking was seized. On March 12, 2019, Defendant was indicted on one count of knowingly and intentionally possessing 50 grams or more of methamphetamine with intent to distribute. [DN 1]. Defendant now seeks to suppress all evidence seized during the execution of the search warrant. [DN 20].

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Consistent with this principle, constitutional jurisprudence provides "the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth

Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). In order to further protect individuals' privacy interests, the Fourth Amendment demands that search warrants, when issued, are only provided upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Probable cause justifying the issuance of such a search warrant exists where, taking the totality of the circumstances, the affidavit supporting the warrant provides the issuant magistrate judge with a "substantial basis . . . to believe 'there is a fair probability that contraband or evidence of illegal activity will be found in a particular place.'" *United States v. McNally*, 327 F. App'x 554, 556 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238). Moreover, in order "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). This requires "a nexus between the place to be searched and the evidence sought." *Id.*

The underlying affidavit which supports the search warrant must actually "contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (citing *Whiteley v. Warden*, 401 U.S. 560, 564 (1971)). "The supporting facts in an affidavit need not be based on direct knowledge and observations of the affiant, but may come from hearsay information supplied by an informant." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 269-70, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Ultimately, the decision of the magistrate judge who initially issued the warrant will be reversed by this Court only if her "determinations were arbitrarily exercised." *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).

This Circuit has further interpreted *Gates*, instructing that a court, in reviewing the sufficiency of the evidence supporting probable cause, is "limited to examining the information contained within the four corners of the affidavit" in light of the totality of the circumstances. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). In order to deter future violations of the Fourth Amendment, the typical remedy for searches made with a defective warrant is suppression. *See United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007). Notably though, suppression is not always warranted and, depending upon the circumstances, evidence may be saved from suppression where an officer acts in objectively good faith in executing an otherwise defective warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). This means that, in situations where "evidence [is] obtained in objectively reasonable reliance on a subsequently invalidated search warrant," the "marginal or nonexistent benefits [of suppression] . . . cannot justify the substantial costs of exclusion." *Id.* In such a case, although probable cause is lacking, the fruits of the search need not be suppressed.

## DISCUSSION

First, Defendant argues that the evidence seized during the execution of the search warrant should be suppressed because detectives withheld critical information regarding Malone's residence from the magistrate judge. [DN 27 at 76]. Specifically, Defendant claims that detectives knew he did not live at the Forrest Hills address, but deceptively referred to the apartment as the "Kendrick Malone residence." [*Id.*; *see* DN 31 at 89]. In support of this position, Defendant contends that detectives knew he had a Tennessee driver's license, his last known address was in Tennessee, and he was on supervised probation in Tennessee; however, none of this information was included in the affidavit. [DN 27 at 76]. Moreover, Defendant asserts that detectives withheld the fact that the utilities where in E.H.'s name, which suggests he did not reside at the apartment.

*Id.* Finally, Defendant alleges detectives withheld information that they had conducted surveillance at the residence but had not seen Malone. *Id.*

In response, the Government notes that detectives included information regarding Defendant's connections to Tennessee in their search warrant application. [DN 29 at 85]. Specifically, the affidavit states that Malone's last known address was in Memphis and he was wanted out of Memphis for drug-related charges. [DN 31 at 92]. Second, the Government asserts that E.H. is mentioned multiples times in the affidavit, including the fact that she and Malone had been living together, but he had recently kicked her out. [DN 29 at 84]. Moreover, the affidavit states that E.H. was a resident of the apartment at the time she made the 9-1-1 call. *Id.* Given these facts, the Government argues "it is ultimately immaterial whether the utilities were in E.H.'s name." *Id.* Finally, the Government claims the fact that detectives conducted surveillance at the residence but did not see Malone is not exculpatory information. *Id.* Detectives conducted a brief investigation before applying for the search warrant out of fear that the information would become stale. *Id.* Thus, the Government argues "the failure to observe the defendant over an extremely limited period of time is not surprising." *Id.* at 85. Moreover, "the surveillance did not suggest that someone other than Malone was using the apartment." *Id.* at 84. Ultimately, the Government contends that "[w]hile the affidavit makes clear that Malone is connected to the apartment, it is the ongoing drug trafficking out of the apartment that creates probable cause to search, not whether Malone 'resides' there." *Id.*

In order to establish a search warrant was obtained in bath faith, a defendant must show: (1) that the evidence presented to the magistrate judge contained false or misleading information; (2) that the false or misleading information was included intentionally or with reckless disregard

for the truth; and (3) that the misrepresentations or omissions were material to the determination of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

In the case, Defendant has failed to establish that the information relating to Malone's residence was false or misleading. First, Defendant has presented no evidence that he did not in fact reside at the Forrest Hills apartment at the time the search warrant was executed. Although Malone had a Tennessee driver's license, his last known address was in Memphis, and he was wanted in Memphis, Defendant could have easily moved to Kentucky since his last encounter with law enforcement. In fact, it appears very likely that Defendant was living in the Forrest Hills apartment given that he had sold narcotics there every day for at least ninety days.

Moreover, the detectives' decision to refer to the apartment as Malone's residence in the affidavit was not misleading under the circumstances. Contrary to Defendant's memorandum, Malone's ties to Memphis, Tennessee were sufficiently described in the affidavit such that the reviewing judge could conclude that although Malone had been living in Memphis, he was most likely residing in Kentucky at the time of the search. Additionally, the affidavit clearly states that E.H. had been living in the apartment with Defendant. Thus, the fact that she paid the utility bills provides little evidence that Malone was residing elsewhere. Finally, given the brevity of the investigation, it was not misleading to omit the fact that Malone had not been seen at the residence during detectives' surveillance. Accordingly, the Court finds Defendant has not established that the search warrant was obtained in bad faith.

Defendant's second argument in support of his Motion to Suppress involves detectives' use a single-photo lineup. At the evidentiary hearing, Detective Awbery testified that police told CS 2 they "were going to show him a photo, may or may not be the person that's Gangsta." [DN 27 at 77]. After reviewing the photo, CS 2 identified Kendrick Malone as Gangsta. *Id.* Defendant

argues that police should have prepared a lineup with multiple photographs given that CS 2 was recently arrested and "had ample motivation to further law enforcement in whatever direction they wanted to proceed." *Id.* Thus, Defendant argues, "the identification was unnecessarily suggestive and should be excluded from the affidavit." *Id.* If the photo identification was excluded from the affidavit, Defendant claims it would show "*no connection at all* to Kendrick Malone." *Id.*

In response, the Government states "[i]t is unclear whether an allegedly impermissibly suggestive photographic lineup can be excluded from consideration as a part of an affidavit in support of a search warrant" given that this issue is typically raised in motions to suppress identifications at trial. [DN 29 at 82]. The Government notes that Defendant cited no cases to support its assertion that exclusion of the identification from the affidavit is the proper remedy, nor has the Government been able to identify any such cases. *Id.* However, even if the identification was impermissibly suggestive, the Government argues it was still reliable and was properly included in the affidavit. *Id.* at 83.

It is well established that a defendant's Fourteenth Amendment rights are violated if the "confrontation leading to the identification was 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02, (1967)). However, Defendant has provided no support for his position that this principle should be applied in the context of an affidavit supporting a search warrant, nor has the Court been able to identity any such authority. Accordingly, the Court declines to apply the "unnecessarily suggestive" due process analysis to the identification in the affidavit. Instead, the Court will analyze Defendant's argument that the photographic lineup should be excluded from the affidavit as an attack on CS 2's credibility. Thus, the issue is whether the affidavit established CS 2's

7

credibility, given that he had recently been arrested and "had ample motivation to further law enforcement in whatever direction they wanted to proceed." [DN 27 at 77].

When reviewing the affidavit for a search warrant where the affidavit is premised in part on information garnered from a confidential informant, the Sixth Circuit requires that the "affidavit [] state facts supporting an independent judicial determination that the informant is reliable." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). This Court reviews the informant's reliability looking at the totality of the circumstances and the affidavit as a whole. *Id.* "[W]hile the affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form." *Id.* (citing *United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000). Facts showing an informant's reliability include (1) whether the police corroborate parts of the informant's story, (2) whether the affidavit provides an in-depth description of the informant's first-hand knowledge, and (3) whether the informant reveals their identity to the reviewing judge. *Id.*

In this case, the affidavit includes facts supporting the magistrate judge's determination that CS 2 was a reliable informant, despite the fact that he had recently been arrested for drug trafficking. First, detectives corroborated CS 2's information with evidence gathered in an earlier investigation, namely a black male nicknamed Gangsta was selling methamphetamine in Forrest Hills, as well as Gangsta's Memphis telephone number. Additionally, detectives connected Malone to the residence through the 9-1-1 call and discovered Malone's ties to Western Kentucky and Memphis, Tennessee. Although detectives should have prepared a full photographic lineup, CS 2 identified Malone as his supplier. Second, the affidavit establishes CS 2's credibility by providing an in-depth description of the informant's first-hand knowledge. Specifically, CS 2 admitted to buying narcotics from Gangsta at his residence every day for the past ninety days,

8

including the day before he was arrested. *See United States v. McNally*, 327 F. App'x 554, 557 (6th Cir. 2009); *United States v. Tillman*, 404 F. App'x 949, 952 (6th Cir. 2010) (When an informant observes a crime "first-hand," that "entitles [the] tip to greater weight than might otherwise be the case."). Finally, CS 2 revealed his identity to the reviewing judge. *See United States v. Tillman*, 404 F. App'x 949, 952 (6th Cir. 2010) ("Unlike a tip from an anonymous informant, a 'tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated' is far more trustworthy."). Based on the totality of the circumstances, there was ample evidence for the reviewing judge to conclude that CS 2 was a reliable informant, despite the fact that he provided the information shortly after being arrested. Accordingly, the affidavit was sufficient to support probable cause and suppression of the evidence seized during the execution of the search warrant is not warranted.

## CONCLUSION

For the reasons stated herein: **IT IS HEREBY ORDERED**: Defendant's Motion to Suppress, [DN 20], is **DENIED.**

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 9, 2020

CC: Attorneys of Record